| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>KARLA MYLES,<br><br>  Defendant. | No. 6:18-cr-2020-JAJ<br><br><br><br>**ORDER** |

This matter comes before the Court pursuant to the government's July 16, 2018 Motion in Limine. [Dkt. No. 13] The government alleges that the defendant, Karla Myles, committed perjury before the grand jury in April 2017. In its motion in limine, it seeks to prohibit the defendant from presenting evidence of duress, contending that the evidence is insufficient as a matter of law. The Court held an evidentiary hearing on this motion at the request of both parties[1] on August 8, 2018. The defendant was present and represented by Raphael Scheetz. The government was represented by Lisa Williams. The motion in limine is **GRANTED**.

### I. Evidence Taken in the Light Most Favorable to the Defendant

Defendant Karla Myles is a fifty year old resident of Waterloo, Iowa with three children. She has a master's degree in human services focusing on marriage and family counseling. On November 27, 2016 Myles was at home when her daughter called requesting to use the defendant's automobile. That evening, the defendant went to her daughter's home where she lived with her boyfriend, Eric Sallis, and her three children. The defendant's daughter and Sallis were having an argument about the daughter's treatment of Sallis' mother. Sallis indicated that when the defendant arrived at the residence, he was going to physically abuse her by slapping her. Upon entering her daughter's home, the defendant went upstairs to see her grandchildren. There she encountered Sallis in the bedroom and an argument commenced. Sallis shoved the defendant and yelled at her in profane terms to get out of the house. When the defendant did not leave, Sallis pulled a gun out of the closet and threatened the defendant with it. The defendant left the house.

---

[1] The government sought the evidentiary hearing contending that the duress evidence would be prejudicial if it did not rise to the level of an submissible defense. The defendant did not desire to admit to perjury unless the Court believed that she had presented an submissible duress defense. Accordingly, both parties asked the Court to preview the duress defense to determine whether the Court would give a duress instruction at the close of the case.

As the defendant was leaving, two other men entered the house. Their names were Tyran and Reggie. Reggie is the father of some or all of the defendant's grandchildren at the residence at issue. When the defendant told Tyran and Reggie that Sallis had a gun, they went upstairs out of concern for the children. The defendant went out to her car. Shortly thereafter, the defendant heard three shots and Tyran came to the car indicating that he had been hit and needed to go to the hospital.

At the hospital, the police interviewed the defendant at length about the events. The interview was recorded audibly and visually. The defendant calmly told the police about the events of the evening and identified Sallis as having a gun and being the shooter of Tyran. Sallis was apprehended in early December 2016 and has been in custody since. He was prosecuted in state court for charges arising out of the shooting. He was prosecuted in federal court for being a felon in possession of a firearm.

In March 2017, the defendant was subpoenaed to the grand jury for the Northern District of Iowa. She picked up her subpoena at the Waterloo Police Department on March 16, 2017. [Gov't Ex. 2] The subpoena told her to contact the witness coordinator at the United States Attorney's Office if she had any questions or concerns about her appearance before the grand jury. She arrived on April 12, 2017 at the grand jury and testified inconsistently with her previous statements to the police. The perjured testimony is set forth in detail in the Indictment.

The November 27, 2016 encounter with Eric Sallis was only the second time that the defendant had ever met him. The events of that evening were obviously traumatic. Prior to her scheduled testimony at the grand jury, the defendant received a threat, conveyed to her by her sister and her niece. The threat was that if the defendant were to "snitch" on Sallis at the grand jury, that something was going to happen to her or her family. From that, the defendant believed that she would be hurt or possibly killed. The defendant was aware that Sallis was in custody but was still afraid of "whoever" could get to her. She was also afraid that her daughter could possibly tell Sallis where the defendant was living. When asked why she did not inform the police about the threat, the defendant responded that because she did not have proof of the threat, "why would I contact the police?"

The defendant's sister, Nicole Myles, was in a Waterloo nail salon in mid-January. She overheard women at the nail salon talking about the events and harm that could come from cooperating against Sallis. Nicole testified that she did not know if the threat was real or if it was just "people talking" at the nail salon.

Sallis is a member of a street gang and has a substantial criminal history relating to

2

violence. [Def't Ex. B-G] At the time she testified before the grand jury, however, the defendant did not know of the gang affiliation or his criminal history other than that he had warrants outstanding for his arrest on November 27, 2016.

The defendant's social life changed dramatically as a result of the incidents of November 27, 2016. Prior to that, she was actively engaged in social activities. After those events, she moved in with her sister, was afraid to be alone, and rarely engaged in social activity.

## II. Applicable Law

To establish the defense of duress, a defendant must offer proof that at the time of the crime charged: 1) there was a present or immediate threat of death or serious bodily injury to the defendant or another if she did not commit or participate in the commission of the crime; 2) the defendant had a well-founded fear that the threat of death or serious bodily injury would be carried out; 3) the defendant did not recklessly or negligently place herself in a situation that it was probable that she would be forced to commit a criminal act; and 4) the defendant had no reasonable, legal opportunity to avoid the threatened harm. *See U.S. v. Jankowski*, 194 F.3d 878, 882–83 (8th Cir. 1999) (quoting *U.S. v. Lomax*, 87 F.3d 969, 961 (8th Cir. 1996)); *see also U.S. v. Ceballos*, 593 F.Supp.2d 1054, 1062–63 (S.D. Iowa 2009). At the evidentiary hearing, the Government did not argue that Myles' fear was not well-founded or that she recklessly or negligently placed herself in a situation where she would probably be forced to commit a criminal act.

A generalized, speculative, or vague fear or threat is not enough to establish the first prong of the defense—a defendant must offer proof that a real and specific threat existed. *U.S. v. Morales*, 684 F.3d 749, 756 (8th Cir. 2012); *U.S. v. Harper*, 466 F.3d 634, 648 (8th Cir. 2006). Further, the threat must be "'immediate'" in the sense that it must occur in close temporal proximity to the subsequent bad acts that the defendant engages in because of the threat." *U.S. v. Oz*, 2017 WL 480389 at *7 (D. Minn. Feb. 2, 2017) (citing *Morales*, 684 F.3d at 756)). Whether or not a defendant had a reasonable, legal alternative to violating the law is judged by an objective standard. *Morales*, 684 F.3d at 757 (quoting *Harper*, 466 F.3d at 648)). "[A] defendant's subjective belief that going to law enforcement would prove futile is insufficient to meet the objective standard[.]" *Harper*, 466 F.3d at 648. The Eighth Circuit Court of Appeals has consistently held that informing the police within the United States is objectively a reasonable, legal alternative to committing a crime. *See Jankowski*, 194 F.3d at 883 n.3 (explaining that a defendant may have reasonably believed going to police in Bogota,

3

Colombia would be futile, but a defendant "could not have reasonably believed [informing] the police in St. Louis would be futile"); *Morales*, 684 F.3d at 757 (holding that Morales could not have reasonably believed exposing the threats to police in Hampton, Iowa would be futile); *Harper*, 466 F.3d at 648 (holding that even when the alleged threats came from a law enforcement officer, informing other law enforcement officials was a reasonable, legal alternative).

### III. Analysis and Conclusion

On November 27, 2016, the defendant suffered a traumatic event when she was present for a shooting at her daughter's home. Due to her presence at that event, she was required to testify in front of a grand jury against her daughter's boyfriend, a man that she knew had prior outstanding warrants for his arrest. The Court finds that these events caused the defendant to have a generalized fear for her safety and that of her family. That generalized fear is reflected by the decline in her social life after the shooting.

To establish a defense of duress, the law requires that the defendant show proof that she was under a specific and immediate threat. Here, the defendant was unable to establish either. The defendant heard about the threat second-hand through her sister and her niece. The defendant could not name a specific person she feared would carry out the threats to her and her family. Instead, she feared "whoever" could get to her even though Sallis was in custody. The threat itself, as described by the defendant and her sister, was vague. She speculated that she or her family might be hurt or killed. Neither the defendant nor her sister had proof of the veracity of the threat. The defendant's sister testified that she did not know if the threat she heard was real or just "people talking" at the nail salon. The threat was, in fact, so vague that the defendant testified she did not feel she could go to the police with so little proof. Because the threat was vague both in terms of what would happen and who would do it, the Court finds that the defendant did not establish she was under a specific and immediate threat regarding her testimony to the grand jury.

The law also requires that the defendant have no reasonable, legal alternative to avoid the threat other than committing the crime. Here, the defendant did nothing to avoid perjuring herself despite having reasonable, legal opportunities. She had frequent contact with law enforcement officers, including when she picked up her subpoena, when she met with the Unites States Attorney's Office, and directly prior to her grand jury testimony. Objectively, it

4

would have been reasonable to inform any law enforcement officer that she feared for the safety of herself and her family. The defendant stayed within the Waterloo community rather than moving to avoid Sallis' associates. The Court finds that the defendant had reasonable, legal alternatives to committing the crime with which she is charged.

The Court finds that the law imposes a high burden on a defendant to be excused from a serious crime because of a threat and this evidence simply does not meet the threshold.

**IT IS SO ORDERED.**

**DATED** this 13th day of August, 2018.

_____
JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

5

Case 6:18-cr-02020-CJW-MAR   Document 34   Filed 08/13/18   Page 5 of 5